**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ORELVY CARRERO GOMEZ,** <br><br> ***Petitioner*,** <br> **v.** <br><br> **TODD BLANCHE,** U.S. Attorney General; **MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security; and **WARDEN** of ERO El Paso Camp East Montana, <br><br> ***Respondents*.** | § § § § § § § § § § § § | **EP-26-CV-00749-DCG** |

**ORDER GRANTING PETITION**

Petitioner Orelvy Carrero Gomez ("Petitioner") challenges his immigration detention while the government facilitates his removal from the United States.[1] Among other things, Petitioner argues that the amount of time he's spent in detention—coupled with uncertainty regarding when (or whether) he'll be removed from the country—requires his release.[2] Respondents, however, insist that Petitioner's continued detention is a product of Petitioner's refusal to comply with removal and is therefore lawful.[3]

For the following reasons, the Court **GRANTS** the Petition **ORDERS** Respondents to release Petitioner from custody.

---

[1] *See generally* Pet., ECF No. 1.

[2] *See id.* at 6–8; Pet'r Reply, ECF No. 15, at 1–2.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] *See* Resp., ECF No. 21, at 3, 7–9; 1st Steele Decl., ECF No. 21-1, at 3.

## I. INTRODUCTION

Petitioner is a Cuban citizen[4] who is subject to an order of removal that became final in August 2014.[5] That removal order triggered a mandatory 90-day detention period while the government sought to remove him.[6] The government, however, didn't remove Petitioner at that time, presumably because:

(1) Cuba wouldn't accept Petitioner; and

(2) the government hadn't identified a third country—that is, a country other than Cuba—that would accept Petitioner either.[7]

After a stint in prison on a drug charge, the government released Petitioner under an order of supervision (an "OSUP") in February 2019.[8]

In December 2025, the government revoked Petitioner's OSUP and took him back into custody to facilitate his removal.[9] Unable to deport Petitioner to Cuba,[10] the government shifted their focus to third-country removal to Mexico, which the government alleges has been unsuccessful due to Petitioner's noncompliance.[11] Respondents report that the government "is

---

[4] Pet. at 4; Resp. at 2.

[5] Removal Order, ECF No. 1, at 14; Resp. at 2; 1st Steele Decl. at 3; *see* Pet. at 5.

[6] *See infra* notes 23–24 and accompanying text.

[7] *See* 1st Steele Decl. at 3 (noting that the government released Petitioner on supervision because there was "No Significant Likelihood of Removable [sic] in the Foreseeable Future").

[8] *Id.* at 2–3; Resp. at 2.

[9] 1st Steele Decl. at 3.

[10] *See* 2d Steele Decl., ECF No. 29-1, at 3 (explaining that removal to Cuba can't occur unless the Cuban government agrees to it, which it has not yet done); Resp. at 2 (stating that the government "fail[ed] to receive approval from the Government of Cuba for Petitioner's removal").

[11] 1st Steele Decl. at 3; 2d Steele Decl. at 3; Resp. at 2.

exploring removal options to all countries permissible under the INA."[12] Yet despite being ordered to tell the Court the country to which the government plans to remove Petitioner and the timeline for doing so,[13] the government has identified no other country besides Cuba and Mexico and no anticipated removal timeline.[14]

Two statutory provisions could conceivably authorize Petitioner's detention here: 8 U.S.C. § 1231(a)(1)(C) and 8 U.S.C. § 1231(a)(6).

First, in certain circumstances, Section 1231(a)(1)(C) authorizes the government to detain noncitizens who fail to comply with removal orders.[15] But it doesn't apply here. Although the government argues that Petitioner has thwarted his own removal by refusing to go to Mexico, it hasn't taken the necessary steps to invoke its authority to detain Petitioner under Section 1231(a)(1)(C).[16]

With that off the table, the only remaining question is whether 8 U.S.C. § 1231(a)(6) authorizes the government to detain Petitioner—which depends on whether his removal is

---

[12] 2d Steele Decl. at 3.

[13] Order Requiring Resp., ECF No. 19, at 3.

[14] *See generally* Resp., 1st Steele Decl.; 2d Steele Decl.

[15] *See infra* Section II.B.3.

[16] *See infra* Section II.C.1.

reasonably foreseeable.[17] Here, Respondents don't appear to have a timeline for Petitioner's removal,[18] which makes for straightforward determinations that:

(1) removal is not reasonably foreseeable; and (thus)

(2) detention is not authorized by 8 U.S.C. § 1231(a)(6).[19]

With neither statutory provision authorizing Petitioner's detention, the Court will order Petitioner's release.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241, a person in immigration detention can challenge detention as unlawful by filing a petition for a writ of habeas corpus.[20] To prevail, the petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[21]

---

[17] *See, e.g.*, *Khoury v. Garite*, 838 F. Supp. 3d 670, 677 (W.D. Tex. 2026).

[18] *See infra* notes 83–85 and accompanying text.

[19] *See infra* Section II.C.2.

[20] 28 U.S.C. § 2241(c); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (citing 28 U.S.C. § 2241(c)(3)).

[21] *See* 28 U.S.C. § 2241(c); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

## B. Relevant Authorities

### 1. 8 U.S.C. § 1231(a)(6)

8 U.S.C. § 1231(a) governs detention of noncitizens who are ordered removed from the country.[22] Once a removal order becomes final, Section 1231(a)(1) provides the government ninety days to secure removal.[23] This is known as the "removal period," during which detention is mandatory under the statute's plain text.[24]

As this case illustrates, though, not all noncitizens are removed during the removal period. Once the ninety-day removal period expires, Section 1231(a)(6) authorizes the government to continue detaining certain noncitizens. Notably, Section 1231(a)(6) doesn't expressly limit how long the government may detain the specified classes of noncitizens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to . . . terms of supervision . . . .[25]

### 2. *Zadvydas v. Davis*

That doesn't mean that the government's Section 1231(a)(6) detention authority is unlimited, though. In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) gives the government unfettered discretion to decide whether and how long to

---

[22] *Zadvydas*, 533 U.S. at 682.

[23] 8 U.S.C. § 1231(a)(1)(A).

[24] *See id.* § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)); *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody.").

[25] 8 U.S.C. § 1231(a)(6) (emphasis added).

continue detention.[26] There, the government continued detaining two noncitizens past the removal period due to their criminal histories.[27] The government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[28]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[29] Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[30] The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[31]

The government's interpretation of Section 1231(a)(6) would've authorized indefinite detention[32]—which, according to the Supreme Court, would raise a "serious constitutional problem."[33] As the Supreme Court had previously explained, "due process requires that the

---

[26] *Zadvydas*, 533 U.S. 678.

[27] *Id*. at 684–86.

[28] *See id.*

[29] *Id*. at 682; *cf. Miller v. French*, 530 U.S. 327, 336 (2000) ("[W]here Congress has made its intent clear, 'we must give effect to that intent.'" (quoting *Sinclair Refin. Co. v. Atkinson*, 370 U.S. 195, 215 (1962))).

[30] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[31] *Zadvydas*, 533 U.S. at 697.

[32] *Id*. at 692.

[33] *Id*. at 690; *see also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[34] As applied to Section 1231(a)(6):

(1) the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2) if it's unlikely that the government will be able to remove a noncitizen within the foreseeable future, detaining them under Section 1231(a)(6) wouldn't serve that purpose; so

(3) interpreting Section 1231(a)(6) to authorize the government to indefinitely detain noncitizens whose removals aren't foreseeable would raise serious constitutional questions.[35]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[36] As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[37] After that 6-month period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien."[38]

---

[34] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

[35] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[36] *Id.* at 689.

[37] *Id.* at 701.

[38] *Jennings*, 583 U.S. at 299 (quoting *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

### 3. 8 U.S.C. § 1231(a)(1)(C)

A final authority to consider for the purposes of this Order is 8 U.S.C. § 1231(a)(1)(C), which provides that:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.[39]

To invoke Section 1231(a)(1)(C), implementing regulations require the government to "serve the alien with a Notice of Failure to Comply" that advises the noncitizen of:

(1) "the provisions of [Section 1231(a)(1)(C)]";

(2) the penalties associated with a noncitizen's failure to comply with removal;

(3) "the circumstances demonstrating [the noncitizen's] failure to comply with the requirements of [Section 1231](a)(1)(C)"; and

(4) "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[40]

---

[39] 8 U.S.C. § 1231(a)(1)(C); *cf. Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) (observing that "the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have the keys to freedom in his pocket" (citation modified)).

[40] 8 C.F.R. § 241.4(g)(5)(ii); *see also Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 708 (W.D. Tex. 2021) ("[W]hen DHS determines that removal needs to be extended under § 1231(a)(1)(C), it is required to serve the alien with a Notice of Failure to Comply that explains the relevant statutes and provides an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." (citation modified)).

### C. Analysis

As explained in *Moreno-Rodriguez v. Warden*, the undersigned Judge follows a two-step framework in cases involving both Section 1231(a)(1)(C) and Section 1231(a)(6):

(1) The Court first considers whether the government has properly invoked its authority to detain the noncitizen under Section 1231(a)(1)(C). If so, then detention is lawful, and the statutory inquiry ends there.

(2) If, however, the government has not properly invoked Section 1231(a)(1)(C), then the Court considers whether Section 1231(a)(6) authorizes detention. At this step, the Court analyzes whether removal is reasonably foreseeable under *Zadvydas*.[41]

And as explained in *Rodriguez Bosch v. Mullin*, the Fifth Circuit's recent decision in *Sosnava Rodriguez v. Vergara* does not affect the Court's approach in Section 1231 cases.[42] The Court applies this framework below.

#### 1. 8 U.S.C. § 1231(a)(1)(C) doesn't authorize Petitioner's detention

The Court begins by considering whether Respondents have properly invoked Section 1231(a)(1)(C). As noted, serving a noncitizen with a Notice of Failure to Comply that meets the four regulatory requirements above is a prerequisite for the government to invoke that authority.[43]

---

[41] *Moreno-Rodriguez v. Warden*, --- F. Supp. 3d ---, 2026 WL 2904489, at *8 (W.D. Tex. Sep. 23, 2026) (Guaderrama, J.).

[42] *Rodriguez Bosch v. Mullin*, --- F. Supp. 3d ---, 2026 WL 3339359, at *8–9 (W.D. Tex. Oct. 29, 2026) (Guaderrama, J.) (discussing *Sosnava Rodriguez v. Vergara*, --- F.4th ---, 2026 WL 3181188 (5th Cir. Oct. 23, 2026)).

[43] *Louis v. ERO El Paso Field Office*, --- F. Supp. 3d ---, 2026 WL 3135891, at *4–6 (W.D. Tex. Oct. 20, 2026); *see supra* note 40 and accompanying text; *infra* note 61 and accompanying text; *see also Khan v. Liggins*, No. 26-CV-00088-ABA, 2026 WL 2013963, at *4 (D. Md. July 10, 2026) (concluding that Section 1231(a)(1)(C) did not authorize continued detention where the government "d[id] not allege that they ha[d] served Petitioners with any Notices of Failure to Comply under 8 C.F.R. § 241.4(g)(5), which would be required if the non-cooperation was a true impediment to removal").

The government served Petitioner with two Notices of Failure to Comply: first on March 26, 2026 ("the First Notice")[44] and then on August 4, 2026 ("the Second Notice").[45] But the Notices are deficient for two reasons.

First, the Notice must advise Petitioner of "the circumstances demonstrating his . . . failure to comply with the requirements of section [1231](a)(1)(C)."[46] Here, the government alleges that Petitioner failed to comply by (1) refusing to sign a notice telling him that the government planned to remove him to Mexico and (2) apparently reiterating his refusal to go to Mexico several times thereafter.[47] But that's not what the Notices say. Instead, the First Notice says that Petitioner "failed to complete a travel document application."[48] But Respondents later admitted that "there has not been an attempt to obtain a travel document for Petitioner to Mexico" because removal to Mexico under the CHNV program doesn't require noncitizens to have any travel documents at all.[49] So the allegation in the first Notice about travel documents is false and fails to inform Petitioner of the "circumstances demonstrating" his alleged failure to comply. And even if Petitioner did refuse to comply with the travel document

---

[44] 1st Notice Failure Comply, ECF No. 21-6.

[45] 2d Notice Failure Comply, ECF No. 25-2.

[46] 8 C.F.R. § 241.4(g)(5)(ii).

[47] Resp. at 3; 1st Steele Decl. at 3; *see* Notice of Removal, ECF No. 21-4.

Besides refusing to sign the Notice of Removal, the government is vague about what exactly Petitioner did: it simply alleges that Petitioner "Failed to Comply" in February and has "refused" to comply every month thereafter. *See* 1st Steele Decl. at 3; 2d Steele Decl. at 3 (same); Resp. at 3 (similar).

[48] 1st Notice Failure Comply at 1.

[49] Suppl. Resp., ECF No. 29, at 1–2; *see* 2d Steele Decl. at 3; *see also Fernandez Del Pino v. De Anda-Ybarra*, No. 3:26-cv-01244-DCG, 2026 WL 3166165, at *5 (W.D. Tex. Oct. 21, 2026) (Guaderrama, J.) (similar facts).

process, those documents wouldn't be "necessary to the alien's departure" nor would his refusal be an "act[] to prevent removal."[50] The government could remove him to Mexico without those documents, so Section 1231(a)(1)(C) wouldn't be implicated at all.

Meanwhile, the Second Notice says, "On February 19, March 24, April 22, June 1, June 29, and July 27, 2026, you refused to comply with Third Country Removal to Mexico."[51] It's questionable whether that's sufficient to advise Petitioner of "the circumstances demonstrating his . . . failure to comply" with removal.[52] On one hand, it enumerates specific dates of alleged noncompliance. But on the other hand, all it says is that Petitioner "refused to comply"; it doesn't explain what actions he took or the "circumstances demonstrating" his noncompliance or refusal. At the very least, the Second Notice doesn't say that Petitioner refused to sign a document notifying him that the government planned to remove him to Mexico.[53] The Court need not decide whether this potential deficiency renders the Second Notice insufficient, though, because the Court finds the Second Notice inadequate for a separate reason described below.[54]

A second, independent requirement is that the Notice of Failure to Comply must include "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[55] Neither of the Notices did so. The First Notice alludes to "the burden

---

[50] *See* 8 U.S.C. § 1231(a)(1)(C).

[51] 2d Notice Failure Comply at 1.

[52] *See* 8 C.F.R. § 241.4(g)(5)(ii).

[53] *See* 2d Notice Failure Comply at 1; *see also supra* note 47 and accompanying text.

[54] *See infra* notes 55, 58–60 and accompanying text.

[55] 8 C.F.R. § 241.4(g)(5)(ii).

to obtain a travel document" being on Petitioner,[56] but again, travel documents have nothing to do with Petitioner's alleged noncompliance here.[57] Otherwise, both Notices merely include warnings that Petitioner must "demonstrate that [he is] making reasonable efforts to comply with the order of removal."[58] A bare assertion that Petitioner must comply with removal is not "an explanation of the necessary steps" to comply[59] because it does not *explain* any specific *actions* he must take.[60] Accordingly, both Notices fail to satisfy the requirements of 8 C.F.R. § 241.4(g)(5)(ii) because they do not explain what Petitioner must do to comply.

The government must follow its own regulations.[61] Simply put, even if refusal to accept removal to Mexico was an "act to prevent removal" within the meaning of Section 1231(a)(1)(C)—an issue that the Court doesn't decide here[62]—the government hasn't followed

---

[56] 1st Notice Failure Comply at 1.

[57] *See supra* notes 49–50 and accompanying text.

[58] 1st Notice Failure Comply at 1; 2d Notice Failure Comply at 1.

[59] *See* 8 C.F.R. § 241.4(g)(5)(ii).

[60] *Fernandez Del Pino*, 2026 WL 3166165, at *6; *see Abdel-Muhti v. Ashcroft*, 314 F. Supp. 2d 418, 430 (M.D. Pa. 2004) (reasoning similarly).

[61] *See, e.g.*, *United States v. Gutierrez*, 443 F. App'x 898, 903 (5th Cir. 2011) ("It is 'an unremarkable proposition' that an agency must follow its own regulations." (citing cases)); *Cerda-Espinosa v. Bondi*, 830 F. Supp. 3d 567, 584–85 (W.D. Tex. 2026) ("For re-detention to be constitutional, the government must have complied with both the applicable statutory provisions and its own regulations."); *Villanueva*, 801 F. Supp. 3d at 700 (collecting cases); *Moreno-Rodriguez*, 2026 WL 2904489, at *9 (applying this principle to Section 1231(a)(1)(C) and its enabling regulations).

[62] There is a split of authority on whether a noncitizen's refusal to accept removal to Mexico allows the government to invoke Section 1231(a)(1)(C). *Contrast, e.g.*, *Gaceran-Jimenez v. Marin*, No. 5:26-CV-01973-BFM, 2026 WL 2262177, at *4 (C.D. Cal. Aug. 5, 2026) (concluding that a noncitizen's refusal to affirmatively accept removal to Mexico "does not constitute noncooperation of a kind that would trigger a suspension of the removal period"), *with Milian Martin v. Warden*, No. 2:26-CV-2346-KCD-NPM, 2026 WL 2640671, at *2 (M.D. Fla. Sept. 8, 2026) (concluding just the opposite).

the regulatory process to invoke that detention authority.[63] The Court once again holds that where the government does not properly follow the procedures required by 8 C.F.R. § 241.4(g)(5)(ii), Section 1231(a)(1)(C) doesn't authorize Petitioner's continued detention.[64]

**2. 8 U.S.C. § 1231(a)(6) doesn't authorize Petitioner's detention either**

Having determined that the government hasn't properly invoked Section 1231(a)(1)(C), the Court will now consider whether Section 1231(a)(6) authorizes Petitioner's detention—in other words, the Court will conduct a *Zadvydas* analysis.[65]

**a. Petitioner's detention is not presumptively reasonable**

*Zadvydas* first requires the Court to determine whether Petitioner's detention is presumptively reasonable.[66] This Court previously concluded that *Zadvydas*'s six-month presumptively reasonable detention period runs continuously from the date on which a removal order becomes final—irrespective of whether the noncitizen spends all or some of those six months in detention.[67]

---

[63] *See supra* notes 43, 46–60 and accompanying text.

[64] *See, e.g.*, *Moreno-Rodriguez*, 2026 WL 2904489, at *9 (holding that the government didn't properly invoke § 1231(a)(1)(C) where nothing in the record indicated it served the petitioner with a Notice of Failure to Comply); *Louis*, 2026 WL 3135891, at *6; *Khan*, 2026 WL 2013963, at *4.

[65] *See supra* notes 35–38 and accompanying text.

[66] *See supra* notes 35–38 and accompanying text.

[67] *Khoury*, 838 F. Supp. 3d at 680 (concluding that "whether detention is presumptively reasonable must depend on when the removal order becomes final—not how long an alien has spent in detention"); *accord Abedi v. Carter*, --- F.4th ---, 2026 WL 3149141, at *26 (10th Cir. Oct. 21, 2026).

Here, Petitioner's removal order became final in August 2014, meaning that his detention under Section 1231(a)(6) was presumptively reasonable through February 2015.[68] That six-month period has long since passed, so Petitioner's detention is not presumptively reasonable.

**b. Petitioner's removal is not reasonably foreseeable**

Because Petitioner's detention isn't presumptively reasonable, the Court must now consider whether Petitioner's removal is reasonably foreseeable. As noted above, Petitioner bears the initial burden of providing good reason to believe that there is *not* a significant likelihood of removal in the reasonably foreseeable future.[69] While "'[g]ood reason' is not an onerous standard,"[70] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[71] If Petitioner carries his burden, the burden then shifts to Respondents to rebut Petitioner's showing.[72]

---

[68] *See supra* note 5 and accompanying text.

[69] *See supra* note 38 and accompanying text.

Some courts have concluded that where (as here) the government re-detains a noncitizen after revoking their release, 8 C.F.R. § 241.13(i)(2) applies and places the initial burden on the *Respondent* to show that such a likelihood of removal does exist. *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention—even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applied, Petitioner's continued detention is unreasonable and not authorized by Section 1231(a)(6).

[70] *Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[71] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[72] *See supra* note 38 and accompanying text.

### *i. Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*

Petitioner carried his burden. He notes that his removal order became final in 2014, yet the government still hasn't been able to remove him to his home country of Cuba.[73] He also casts doubt on the government's ability to remove him to a third country like Mexico.[74] For those reasons, Petitioner argues that removal is not reasonably foreseeable.[75]

Petitioner has now been detained for over 11 months,[76] yet there is no indication that the government currently has a viable path to remove him. These circumstances provide good reason to believe that there isn't a significant likelihood that the government will remove Petitioner in the reasonably foreseeable future.[77]

### *ii. Respondents have failed to rebut Petitioner's showing*

Respondents, meanwhile, offer little to rebut Petitioner's assertion that his removal isn't foreseeable. The government's position is premised entirely on Petitioner's refusal to accept

---

[73] Pet. at 5–7 (mentioning the government's inability to effect removal to Cuba since the 2014 removal order and arguing that the government cannot obtain a travel document for Petitioner's removal to Cuba because "there is no present immigration accord between Cuba and the United States"); *see id.* at 6 ("Respondent[s] had plenty of time to 'since 2014' remove Petitioner.").

[74] Pet'r Reply at 2 (calling third country removal "speculative" because "there is no evidence of acceptance by any country, no travel documents, and no confirmed removal date").

[75] *Id.*; Pet. at 6.

[76] *See* 1st Steele Decl. at 3 (noting December 3, 2025 detention date).

[77] *See, e.g.*, *Khoury*, 838 F. Supp. 3d at 683 (determining that a petitioner carried his burden where he showed that the "removal process is in virtually the same place as it was" decades prior); *Suarez v. Chestnut*, No. 1:26-CV-05147 (EJD), 2026 WL 2547116, at *2 (E.D. Cal. Aug. 28, 2026) (concluding, under similar circumstances as this case, that "the fact that [a noncitizen] d[id] not consent to his removal to Mexico demonstrate[d] that there [wa]s no significant likelihood of removal in the reasonably foreseeable future"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

removal to Mexico.[78] But "[w]hether removal is reasonably foreseeable for *Zadvydas* purposes doesn't turn on whether the alien cooperates with removal efforts"—the latter is only relevant to detention under § 1231(a)(1)(C), not § 1231(a)(6).[79] If the government wished to rely on Petitioner's refusal to accept removal to Mexico as a basis to detain him, it needed to properly invoke Section 1231(a)(1)(C).[80] It didn't.[81]

Accordingly, the government's authority to detain Petitioner hinges on whether his removal is "significantly likely in the reasonably foreseeable future."[82] Respondents, however, concede that: (1) the government has "fail[ed] to receive approval from the Government of Cuba for Petitioner's removal"[83] and (2) removal to Mexico has thus far been unsuccessful.[84] And although the government is considering removal to a different third country, Respondents have specified neither a potential country nor a timeline for removal,[85] despite a court order requiring them to do so.[86] In other words, there is currently no concrete plan for Petitioner's removal.

---

[78] *See* Resp. at 3, 7–9; 1st Steele Decl. at 3.

[79] *Moreno-Rodriguez*, 2026 WL 2904489 at *9; *see supra* note 41 and accompanying text.

[80] *See supra* notes 41–43 and accompanying text.

[81] *See supra* Section II.C.1.

[82] *See supra* Section II.B.2.

[83] Resp. at 3.

[84] *Id.*; *cf. Pablo Pablo v. Venturella*, --- F. Supp. 3d ---, 2026 WL 2294407, at *7 (W.D. Tex. Aug. 7, 2026) (quoting the government's admission that, under similar circumstances, "Mexico will not accept someone [for removal] who does not agree to go").

[85] *See* 1st Steele Decl. at 3; *see generally id.*; Resp.; 2d Steele Decl.

[86] Order Requiring Resp. at 3.

Section 1231(a)(6) doesn't authorize the government to detain Petitioner indefinitely while it looks for a country that will accept his removal.[87] Under these circumstances, Petitioner's detention is unlawful and no longer authorized by statute.[88]

**D. Scope of Relief**

Because Section 1231(a) doesn't authorize Petitioner's continued detention, the Court will order his release.[89] *Zadvydas* counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[90] The Court directs Respondents to release Petitioner under a form of supervised release that is consistent with 8 U.S.C. § 1231(a)(3) and corresponding regulations.[91]

---

[87] *See Zadvydas*, 533 U.S. at 689.

[88] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

[89] *See Zadvydas*, 533 U.S. at 699–700 (contemplating a noncitizen's release where detention is no longer authorized).

[90] *Id.* at 700.

[91] *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); *see also, e.g.*, 8 C.F.R. § 241.5 ("Conditions of release after removal period"); *id.* § 241.13(h) ("Conditions of release").

Respondents may continue to facilitate removal while Petitioner is released under supervision. However, Respondents may only:

(1) re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i);[92] or

(2) invoke the authority of Section 1231(a)(1)(C) to detain Petitioner in accordance with the procedures set forth under 8 C.F.R. § 241.4(g)(5).[93]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner Orelvy Carrero Gomez has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[94]

The Court therefore **GRANTS** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1).

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION** **<u>on or before November 8, 2026</u>**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **<u>by 5:00 PM Mountain Time on November 9, 2026</u>**.

The Court **FURTHER ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).

---

[92] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the government may revoke a noncitizen's OSUP where they violate their conditions of release); *id.* § 241.13(i)(3) (identifying the process by which the government may revoke a noncitizen's OSUP to execute removal).

[93] *See id.* § 241.4(g)(5) (setting forth procedures relating to detaining noncitizens who fail to cooperate with the government's removal efforts).

[94] *See* 28 U.S.C. § 2241(c).

The Court **FURTHER ORDERS** that Respondents may only invoke the authority of Section 1231(a)(1)(C) to detain Petitioner in accordance with the procedures set forth under 8 C.F.R. § 241.4(g)(5).

**So ORDERED and SIGNED this 5th day of November 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**